J. G. HUTCHINSON & COMPANY, Appellant, v. MORRIS BROTHERS, Defendant; JOHN F. M. BRASSFIELD, Interpleader, Respondent.

**Kansas City Court of Appeals, May 25, 1908.**

1. **FRAUDULENT CONVEYANCES:** Evidence: *Held,* the action, of the trial court in overruling a demurrer to the evidence in interpleader's behalf was proper.

2. **EVIDENCE: Objection: Hearsay: Appellate Practice.** Where on objection certain hearsay evidence is refused admittance, and later on the witness repeats the matter excluded and no objection is made, it cannot receive attention on appeal.

3. **TRIAL AND APPELLATE PRACTICE: Evidence: Objection: Declaration.** The specifications that the declarations of a vendor out of possession of the sold goods are incompetent, should be made in the trial court and not in the appellate court; and a mere objection "I don't think that it is incompetent," is wholly insufficient.

4. ———: ———: ———: ———. An objection to a letter of the vendor written after parting with the possession of the property that "we object unless he reads the whole letter," means that there is no objection if the whole letter is read; and the court's ruling "let the letter be admitted," means the whole letter.

Appeal from Grundy Circuit Court.—*Hon. Paris C. Stepp,* Judge.

AFFIRMED.

*Platt Hubbell* for appellant.

(1)    The trial court erred in refusing to sustain plaintiff's demurrer to the interpleader's evidence. This case cannot be distinguished, on the present record, according to interpleader's own evidence, from the cases of Lowrence v. Barker, 82 Mo. App. 125; Dry Goods Co. v. Brown, 73 Mo. App. 245, 99 Mo. App. 444; Shoe Co. v. Arnold, 82 Mo. App. 7; Harrison v. Min. Co., 95

Mo. App. 80; Mfg. Co. v. Troll, 77 Mo. App. 344; Mackler v. Cramer, 40 Mo. App. 382; Case v. Espenschied, 69 S. W. 277; State v. O'Neill, 151 Mo. 89. (2) The court erred in admitting hearsay declarations of Charles Morris and Marion Morris. "After a vendor has parted with his property, he has no more power to impress the title by either his acts or his declarations than a mere stranger; such declarations are only hearsay and cannot affect the title of the vendee." Stewart v. Thomas, 35 Mo. 207; Albert v. Besel, 88 Mo. 154, 101 Mo. App. 602.

*Hall & Hall* for respondent.

(1) Interpleader started to tell about a conversation with Marion Morris about the stock of goods turned over to the interpleader, when plaintiff's counsel said, "I don't think it would be competent." The court said, "I expect it is proper." The interpleader then told what Marion said he had told Charles to turn the goods over to interpleader if he didn't show up at the trial down in Kansas. This remark of plaintiffs' counsel was in no sense a valid objection to the evidence as has been many times decided, a few of the cases being here given. Howard v. Brown (Mo.), 95 S. W. 191; Chaffee v. Railroad, 64 Mo. 193; Seligman v. Rogers, 113 Mo. 654; Bank v. Scalzo, 127 Mo. 185; Stark v. Knapp & Co., 160 Mo. 552; Smith v. Dowling, 85 Mo. App. 514; Wibracht v. Annan, 89 Mo. App. 370.

ELLISON, J.—This case was here on former appeal and is reported in 86 Mo. App. 40, where a statement of the case can be found. It is perhaps necessary to state shortly that the plaintiffs, as wholesale merchants, sold to Morris Bros., a partnership composed

of Marion and Charles Morris, a bill of goods, for which afterwards they brought an action for the purchase price and sued out an attachment which was levied upon their partnership property. After the sale of the goods by plaintiffs, Marion Morris became indebted to the interpleader Brassfield in the sum of $500 in the manner shown by said statement. To secure interpleader from the debt of Marion, Charles executed in the firm name a mortgage on their partnership effects, which interpleader failed to have recorded. The plaintiffs contend that it was agreed between the parties to leave it off the record, but interpleader testified that he thought that he had had it recorded and that it was a mistake on his part in not having it done.

The interpleader claimed that the goods were turned over to him by Charles Morris to pay the debt and that he did not claim by virtue of his mortgage. Marion Morris was not present at the time the mortgage was executed and the interpleader, in order to show that he consented to the sale and transfer of the goods to himself, introduced the statement of witnesses, which consisted of what Charles told them Marion had told him. The cause was reversed on the ground that the evidence was mere hearsay. The court in the opinion used this language: "None of these witnesses pretended that Marion himself had said he authorized the sale." In the brief in that case appellants (the plaintiffs) admitted that it was competent to have proven what the witness himself heard Marion say in reference to the matter. The judgment in the trial court was again for the interpleader.

We have examined the evidence taken at the last trial and we are content with the action of the trial court in refusing a demurrer to the evidence in interpleader's behalf. A careful re-examination of the entire case has left us satisfied with the views heretofore expressed.

At the last trial, as at the first, interpleader endeavored to show that Marion Morris, for whom interpleader had furnished cash bail and which Marion forfeited, had consented that Charles Morris, who was his partner and brother, should turn over to interpleader the stock of goods in controversy as indemnity to the latter. He undertook at the first trial to show such consent by having witnesses state, not what they had heard Marion say, but what they heard Charles say Marion had said to him. Plaintiffs objected to such evidence as hearsay, but it was received by the trial court and we reversed the case for another trial. As stated above, plaintiffs conceded at that time that the evidence would have been proper had witnesses stated what they themselves heard Marion say as to his consent. But plaintiffs now guard such concession by the qualification that Marion's statements must have been before he and Charles parted with possession and that any statement after the goods had been turned over to interpleader was the statement of a vendor after parting with possession and could not affect the title or right of these plaintiffs as attaching creditors. Plaintiffs now contend for two grounds of objection as arising at the last trial. One, against evidence of what witnesses had heard Charles say that Marion had said, and the other against evidence of what Marion himself said after parting with possession. The foregoing is necessary to an understanding of the position in which the record places the parties.

The record shows that in the first instance interpleader, as a witness, again started to repeat the error of the first trial by telling what he heard Charles say that Marion had said. When plaintiffs objected, interpleader's counsel did not insist and nothing further was said by the witness on that head and no ruling was made. But shortly after, as shown by page 13 of the record, the witness, seemingly bent on repeating the er-

ror of the first trial, stated that Charles said that Marion said he would pay the bail debt.    No objection was made and no notice taken of this.

We then come to the second ground of objection bearing on what the witness himself heard Marion say in regard to consenting that the goods should be turned over to interpleader.    Plaintiff's counsel remarked, "I don't think it would be competent." The court admitted it and plaintiff excepted.    No ground of objection was specified.    It should have been stated why it was not competent.    It was, in point of fact, and so appeared to be, an admission of Marion's made after he had parted with possession, but that was not assigned as the reason for objecting.    In this court that specific ground is stated as the objection, and it is argued and insisted upon.    But the place for specification was with the trial court.    If the point is as clear in plaintiffs' favor as now contended, he would undoubtedly have obtained a favorable ruling from the trial court if he had stated the point now made.    The objection is no more a proper objection than if the language used had been "I think I will object." [Howard v. Brown, 197 Mo. 36; Kansas City v. Oil Co., 140 Mo. 458, 475; Lumber Co. v. Rogers, 145 Mo. 445; Smith v. Dowling, 85 Mo. App. 514.]

The next objection on this head arose when another witness was on the stand and a letter written by Marion was offered.    In this instance the objection was properly specified and was grounded upon the letter being written after parting with possession of the property.    But, singularly enough, after stating the objection, counsel qualified it by adding, "and we object *unless* he reads the whole of the letter."    This meant that there was no objection if the whole letter was admitted.    The court then ruled, "Let the letter be admitted."    That ruling meant the whole letter and though made in compliance with plaintiff's proviso, they took an exception.    However, the record stops there

and, in fact, no letter appears to have been admitted, and the case proceeded as to other matters.

It is thus clear that no proper objection was made to the evidence and that no complaint ought now to be heard. The judgment should be affirmed, and it is so ordered. The other judges concur.